## MILTON.

Where two representatives were elected at one balloting by a town which had a right
to send but one, it was held, that the election of both was void.

The rules and orders of one house of representatives are not binding upon another.

Precepts for a new choice will not be issued in cases of illegal election.

THE election of Asaph Churchill and William Pierce, members returned from the town of Milton, was controverted, by Amos Holbrook and others, on the ground, that the number of ratable polls, in said town, did not entitle it to two representatives.[1]

The committee on elections, on the seventeenth of June, made the following report in this case, which was agreed to the same day, namely[2]:—

" A meeting of the inhabitants of said town, legally warned, was held on the fourth day of May last past, for the purpose of choosing one or more representatives from said town to the general court; at which meeting, said inhabitants did choose the said Asaph Churchill and William Pierce, at one balloting, as representatives from said town.

In this case, the selectmen and assessors of said town produced, before the committee, a list of all the persons they considered as ratable polls belonging to said town, on the first day of May last. The said list contained the names of three hundred and eighty-six persons: two under the age of sixteen years, to wit, Abner Bowman and Charles Belcher, two, who, more than a year before the first day of May last, had enlisted, and have ever since continued in the service of the United States, to wit, Joseph Hunt and George Reed: nine transient persons, not belonging to said town, to wit, Croade Sturtevant, Jacob Warner *alias* John Keith, Heman M. Burr, Charles Howard, Adolphus Porter, Simon Dunnels, James Hooton, Zebra Woodward, and James M. W. Thayer, the last of whom came to said town on the third day of May last, staid there a few days, and then enlisted into the service of

[1] 33 J. H. 33, 34, 66.                    [2] Same, 213.

the United States. Three other persons on said list did not belong to said town, namely: Henry Vose, Enoch Baldwin, and Nathaniel Thomas; and one person not in existence, whose name was put on said list, as the assessors averred, by mistake. The committee, on these facts, are unanimously of opinion, and do report, that the said town of Milton did not, at the time of said election, contain a sufficient number of ratable polls, to entitle it to two representatives; and inasmuch as the said Asaph Churchill and William Pierce were chosen at one and the same balloting, that the supposed election was utterly void, and that their seats in this house ought to be declared vacated.

At the request of two of the committee, it is observed, that the petitioners did not give notice to the selectmen and to the sitting members, pursuant to the requisition of the last house of representatives. But the sitting members attended before the committee, and were fully heard, and made no objection before them, of a want of notice."

The "requisition," referred to by the committee, is contained in the following resolve or order of the house, passed February 28, 1811:—

" No petition against the election of any member shall be sustained or committed in the house, unless at the time of presenting the same to the house, the said petition be accompanied by evidence that a copy of the same petition has been given to some one of the selectmen of the town, whose elective franchise is affected thereby, and the person or persons elected, or left at their several last and usual places of abode, ten days at least, before the petition shall be presented to the house."

The committee probably called this " the requisition of the last house of representatives," in consequence of the following entry in the journal of the last house :—

JUNE 4, 1811.

" The speaker ruled, that the rules, with regard to elections, adopted by the last house, on the 28th of February, be considered as the rules of proceeding for the present house."

The following order passed the last house :—

FEBRUARY 29, 1812.

" Ordered, That in future, all petitions against any member or members returned to the house of representatives, shall be presented, read and committed within the first four days of the first session of the general court."

The petition, in the above case, was not presented within the first four days of the first session, and objections were made against its being committed : It was said, that the order of the last house was intended to operate prospectively, and, according to usage and propriety, was binding on this house : On the other hand, it was said to be perfectly well known, that the house, for the time being, had the exclusive right of determining questions respecting the election of its members, and that one house could not make rules that should be binding upon another. Very little was said upon the subject until the question of the acceptance of the report of the committee came before the house, when a debate arose, of which, it is believed, the following outline contains the material arguments :—

Against accepting the report :—It was said that the house were bound to preserve consistency ; that by a law of the last session, the town of Milton is obliged to pay, in the state tax, for 375 polls, according to the return of their assessors ; and that, as they were obliged to bear the burdens, they ought not to be deprived of the privileges of government ; that a town in the neighborhood of Milton, which returned to the committee of valuation only 267 polls, now has two representatives on the floor of the house ; that the house ought not to go behind the return of the selectmen and assessors, but should leave them to be punished by legal process, if they conducted improperly ; that those transient persons, who are always floating, some of whom were on the list of ratable polls in Milton, ought to be taxed somewhere, and that the selectmen and assessors of that town had very properly put them on the list of ratable polls, because they were there on the first of May—some of them, indeed, were not there till after the first of May—but it was said, that it had been usual to count the ratable polls on the day of the election of representatives ; that there was no reason why both members returned in this case should lose their seats on account of their having been chosen at one balloting, when the town was unquestionably entitled to one. If there be a distinction between a choice, in such a case, at one, and at separate ballotings, it must be either because it is difficult to discriminate, or because the house would punish the town ; that the house is not authorized to inflict punishment, and if it were, still Milton is not a subject of punishment, because she bears the burdens of the state, in the same manner as if she had 375 ratable polls ; that there is no difficulty in determining which of the members should retain his seat ; that the legislature might decide it ; that the one, whose name was

first on the votes, or who had the largest number of votes, should continue to represent the town; that the house will be indulgent to towns when there is no flagrant misconduct, and when the number of ratable polls is very nearly sufficient to authorize the proceedings; and above all, it was insisted, that the house was bound to regard the rules, respecting elections, adopted by former houses, at least, until new rules are formed; that those rules were nugatory unless they operated prospectively; that the only object in adopting them, was to regulate the proceedings of this house; that the rules existed when the present members were chosen; that they were proper in themselves; that great inconvenience was felt before they were adopted; that they should be adhered to, in order to acquaint the public how to proceed, and to introduce uniformity; that the object of appointing a reporter of proceedings in these cases was to produce such uniformity, by reports of decisions by the house; that these decisions will be of no authority, and answer no good purpose, if the rules of proceeding, under which one house act, are disregarded by the next; that as the house in 1811 acted upon the rules in 1810, and the people throughout the state were or might have been appraised of those rules, the house should scrupulously adhere to them, unless, upon the face of the report, it appears that the town and the sitting members waved the privilege; that the law of courtesy is as binding as any other law; that the house, at the commencement of a session, could not be organized, but by obeying this law; that it has for a long time been the constant usage, for the oldest member of the Boston seat to preside at the choice of a speaker and clerk of the house, and if some future house should refuse to acquiesce in this mode of organizing, there would be great inconvenience and confusion; that the members, this session, took their seats by lot, according to an order of the last house; and that the same reasons operated to induce the house to conform to the rules respecting controverted elections, which operated in the other instances, namely, convenience and regularity; that if the report is accepted, there will hereafter be no precedent or principle, by which the house will feel itself bound. That the reason why the sitting members did not object before the committee, to their want of due notice, was, that the question, whether orders of former houses were binding, had in their opinion been determined, when the petition was committed.

On the other hand, it was insisted, that this was the first instance, in which it was ever pretended, that one house of representatives could bind another to pursue any particular course, respecting the election of its members; that the constitution had decided the point. In the third section, chapter 1st, part 2d, of that instrument, it is said ' the house of representatives shall be the judge of the returns, elections, and qualifications of its own members, as pointed out in the constitution;'—' and shall settle the rules and orders of proceeding in their own house.' That the ' rules and orders ' of one house were never considered as binding upon another; on the contrary, at the commencement of the first session, the house always forms and adopts its own rules and orders. Sometimes, former rules are adopted; but the very circumstance of their being adopted shows that they are not considered binding before their adoption. It was acknowledged, that it is just, that the towns and sitting members, whose elections are controverted, should have reasonable notice. In this case, they have had notice, and a full hearing; the acceptance of the report, therefore, will violate no principle of natural justice. As the facts are found, and it is ascertained that there was not a sufficient number of ratable polls, to entitle the town to two representatives, the constitution must now control the house. Whether the house will inquire, is one question; circumstances may render it expedient and proper not to make the inquiry; as unreasonable delay in forwarding a remonstrance, or want of notice

to the parties interested. But after the parties have been heard, and the result of the investigation is made known to the house, it is too late to say that the house ought not to decide according to the facts and the constitution.

As to the number of ratable polls returned to the committee of valuation, it was answered, that as Milton sent two representatives last year, the assessors might have returned a sufficient number to justify the proceedings of the town ; or there might have been more ratable polls there, last year, than this ; that if the committee on elections could not go behind the return of the selectmen and assessors, and ascertain the true number of ratable polls, frauds might be practised with impunity ; that the method of inquiry, which is founded on the reason and nature of the thing, and to which the committee had in this instance conformed, had been uniform since the adoption of the constitution, and was now for the first time questioned ; that there was no way of determining, which of the two representatives should retain his seat, if one were entitled to it ; and that it had been the constant usage, in such cases, to vacate the seats of both ; that there would be no departure from any principle, which the house had heretofore adopted, in accepting the report, inasmuch as the question turned merely upon the form of proceedings, by which the house were not bound, and which could scarcely be said to involve a principle ; that the uncertainty and confusion, which were apprehended from the acceptance of the report, could not follow, because all tribunals occasionally change their forms of proceeding, but while they adhere to the principles and spirit of the laws, under which they act, no confusion is experienced or to be dreaded ; that the evils which are predicted, as the necessary consequences of accepting this report, are rather to be anticipated from the violation of the fundamental principles of the constitution, and a disregard of the maxims of justice, of equity, and of our ancestors.

After the report was agreed to, and the seats of the members returned from Milton, declared vacated :—

Mr. Holmes moved, that a new precept be issued to the town of Milton to chose one or more representatives to this house ; and he cited the case of Amherst in 1780,[1] in which a new precept was issued, in a case of illegal election.

Against this motion, the constitution was quoted, which provides, that " the members of the house of representatives shall be chosen annually in the month of May, &c." It was said, there are no exceptions to this provision, except what are found in the constitution itself. And all the exceptions, there found, are in the sixth chapter, and include only cases of election or appointment of members to offices, the accepting of which operates as a resignation of their seat in the house. In such cases, the constitution provides that " the place so vacated, shall be filled up."

Mr. Holmes's motion was lost.

Mr. Cannon then moved, that the committee on the pay roll be directed to make up the travel and attendance of the gentlemen returned as members from Milton, to the day on which their seats were declared vacated, inclusive.

This motion was lost.

[1] Ante, pp. 1, 2.